IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Anthony Joe, | Case No. 8:10-cv-2385-RBH-JDA |
| Plaintiff, | **REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** |
| v. | |
| Beverly A. Wood; Robert M. Politeman, a/k/a Polietman; Denise Bryant; Daniel C. Plyler; T. Ragland; Jane Doe; Willa Huggins; John Doe; Mr. Claytor; Ms. Delaney[1]; Mr. Harouff, a/k/a Harouf; Ms. Swinger; Mr. Williams; Amy R. Enloe, Nurse Practitioner at Perry; Sylvia Roberts, MHCCC at Perry, | |
| Defendants. | |

This matter is before the Court on Plaintiff's motions for preliminary injunction and partial summary judgment. Plaintiff is proceeding pro se and brought this civil rights action under 42 U.S.C. § 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

Plaintiff filed this action on September 13, 2010, alleging violations of his First, Eighth, and Fourteenth Amendment rights. [Doc. 1.] On December 3, 2010, Plaintiff filed

---

[1] Defendant Ms. Delany's name is misspelled in the caption of the original Complaint. The Court will refer to this defendant as "Delany."

a motion for preliminary injunction. [Doc. 22.] Defendants[2] filed a response on December 20, 2010. [Doc. 25.] Plaintiff filed a declaration on December 28, 2010.[3] [Doc. 29.]

On January 4, 2011, Plaintiff filed a motion for partial summary judgment [Doc. 30] and a document captioned "suicide note" [Doc. 31]. Plaintiff filed a declaration regarding new evidence on January 31, 2011. [Doc. 38.] On February 4, 2011, Defendants filed a response in opposition to Plaintiff's motion for partial summary judgment. [Doc. 42.] On February 15, 2011, Plaintiff filed a declaration regarding Defendants' response.[4] [Doc. 47.] Plaintiff's motions are now ripe for review.

## **BACKGROUND**[5]

Plaintiff, at all times relevant to this action, was in the custody of the South Carolina Department of Corrections ("SCDC") and housed at Perry Correctional Institution ("PCI").[6]

---

[2] In this Report and Recommendation ("R&R"), "Defendants" refers to Defendants Denise Bryant, Ms. Delaney, Mr. Harouff, Willa Huggins, Robert M. Politeman, T. Ragland, Ms. Swinger, Mr. Williams, Beverly A. Wood. Defendants Daniel C. Plyler, Mr. Claytor, John Doe, and Jane Doe were summarily dismissed without service of process. [Doc. 15.] Defendants Amy R. Enloe and Sylvia Roberts were added when Plaintiff amended his complaint, which was after Plaintiff filed the motions at issue in this R&R. [Doc. 74.]

[3] This document was docketed as a declaration; as the document appears to respond to Defendants' response in opposition, the Court will consider Docket Entry 29 as a reply by Plaintiff.

[4] The Court will consider Docket Entry 47 as Plaintiff's reply to Defendant's response in opposition, Docket Entry 42. *See supra* note 3.

[5] The Court provides the Background as alleged by Plaintiff in Plaintiff's original Complaint because the motions addressed in this R&R were filed before Plaintiff filed the Amended Complaint. However, in an abundance of caution, the Court has also reviewed the Amended Complaint and has determined that the analysis contained in this R&R would not change based on the allegations in Plaintiff's Amended Complaint. Although the Amended Complaint references the Fifth and Thirteenth Amendments—in addition to the First, Eighth, and Fourteenth Amendments, which Plaintiff addressed in the original Complaint—and adds two defendants, Enloe and Roberts, the Amended Complaint adds no new causes of action but merely adds detail to the allegations contained in the original Complaint. [*Compare* Doc. 74, *with* Doc. 1.]

[6] Prior to being house at PCI, Plaintiff was housed at McCormick Correctional Institution, Lieber Correctional Institution, and Lee Correctional Institution. [*See* Doc. 30-1 at 35–36.] The Court notes Plaintiff's prior housing assignments because Plaintiff has provided some medical records from these institutions. [*See* Docs. 22-1, 30-1.]

2

[Doc. 1 at 2.[7]] Generally, Plaintiff alleges he has not received proper treatment for his mental illness and was deprived access to his legal materials such that he missed an opportunity to respond to a motion for summary judgment in another case and to appeal a case. Plaintiff's specific allegations are outlined below.

First, Plaintiff alleges Defendant Beverly A. Wood ("Wood") changed Plaintiff's diagnosis from paranoid schizophrenia to intermittent explosive disorder when Wood realized Plaintiff had filed a lawsuit alleging he was not receiving proper treatment for paranoid schizophrenia. [Doc. 1 at 4.] Plaintiff further alleges the medications prescribed by Wood to treat his mental illness do not provide adequate treatment, and Wood submitted perjured testimony to state and federal courts. [*Id.* at 5.]

Second, Plaintiff alleges Wood told him that, as part of his treatment, he would participate in group therapy classes and be placed in a dorm with other mentally ill prisoners. [*Id.*] Plaintiff alleges Defendant Denise Bryant ("Bryant") did not assign Plaintiff to group therapy classes, and Plaintiff was not assigned to a dorm for mentally ill prisoners. [*Id.*]

Third, Plaintiff alleges Defendant T. Ragland ("Ragland") would not allow Plaintiff to receive his mental health medication. [*Id.*] Plaintiff alleges that one day when Ragland would not allow Plaintiff to receive his mental health medication, Plaintiff slammed a chair into the wall. [*Id.*] Plaintiff alleges the police placed him in a cell naked, and he was punished because he tried to receive his medication. [*Id.*] Further, Plaintiff alleges that on another occasion, Ragland prevented Plaintiff from receiving his mental health medication

---

[7] The Court cites to the page numbers of the electronic form of the document—i.e., the page numbers provided by the CM/ECF system—rather than Plaintiff's handwritten page numbers.

by refusing to issue Plaintiff an identification ("ID") replacement form; Plaintiff alleges he cannot get his medication without an ID. [*Id.* at 6.] Plaintiff alleges he "went be[r]serk [and] jumped two police." [*Id.*] Plaintiff alleges the disciplinarian entered a "GBNA ruling" because Plaintiff did not have his medicine. [*Id.*]

Fourth, Plaintiff alleges that on another occasion, Ms. Wessinger[8] would not allow Plaintiff to receive his medication, and Ms. Wessinger wrote an incident report stating Plaintiff had struck her with an object. [*Id.*] Plaintiff alleges the police took all of his possessions and left him naked in his cell, and he was punished for the incident. [*Id.*]

Fifth, Plaintiff alleges he once began cutting his arm open to take out the microchip the government had placed in his arm. [*Id.*] Plaintiff also alleges he frequently goes on hunger strikes and has attempted to hang himself. [*Id.*] Plaintiff alleges the police kept Plaintiff on C.I.[9] for two weeks after the doctor took Plaintiff off suicide watch. [*Id.* at 8.]

Sixth, Plaintiff alleges Defendant Mr. Williams ("Williams") sprayed Plaintiff with excessive amounts of gas. [*Id.* at 6.] Plaintiff alleges the police stripped him in the cell with pools of mace on the door, walls, and floor. [*Id.*] Plaintiff alleges he did not have a mattress and had to sleep naked on the floor, and the mace burned his skin. [*Id.*]

Seventh, Plaintiff alleges Defendant Robert M. Polietman ("Polietman") diagnosed Plaintiff with bi-polar disorder and prescribed Plaintiff certain medications. [*Id.* at 6–7.] Plaintiff alleges Delany took Plaintiff off all medication prescribed by Polietman. [*Id.* at 7.]

---

[8] Ms. Wessinger is not a named defendant in this case.

[9] "C.I." stands for crisis intervention; a crisis intervention cell "is used to provide round-the-clock observation of an inmate that has been deemed a threat to his or her own health." [Doc. 30-1 at 6–7.]

4

Eighth, Plaintiff alleges he was diagnosed by a neurologist with a non-epilictic seizure disorder, and the neurologist stated Plaintiff needed monitoring to determine if the seizure disorder was related to Plaintiff's mental health. [*Id.*] Plaintiff alleges the medical personnel did not take Plaintiff to the neurology clinic for follow-ups as instructed, and he began to have seizures. [*Id.*] Further, Plaintiff alleges Defendant Willa Huggins ("Huggins") refused to see Plaintiff. [*Id.*] Plaintiff also alleges one medication prescribed by Polietman caused Plaintiff to have seizures more frequently. [*Id.*]

Ninth, Plaintiff alleges Wood and Polietman placed Plaintiff on medication that does not work. [*Id.*] Plaintiff again alleges Wood lied to state and federal judges about the therapeutic quality of this medication. [*Id.*]

Tenth, Plaintiff alleges medical personnel refused to see him regarding pain shooting through his left leg and foot. [*Id.* at 8.]

Eleventh, Plaintiff alleges he was punished for displaying symptoms of his mental disorder; these symptoms include slamming chairs, fighting police, hunger strikes, suicide attempts, and "cussing police." [*Id.*] Plaintiff also alleges he receives no treatment for his impulsive disorder. [*Id.*]

Finally, Plaintiff alleges Defendant Ms. Swinger ("Swinger") told Plaintiff he could not have his legal materials, which prevented him from answering the defendants' motion for summary judgment in a pending case. [*Id.* at 9.] Plaintiff also alleges he could not appeal to the Fourth Circuit Court of Appeals. [*Id.*] Plaintiff alleges Defendant Mr. Harouff ("Harouff") threw away Plaintiff's legal materials. [*Id.*] Further, Plaintiff alleges Wood, Harouff, and Williams "conspired to obstruct the due course of justice by throwing away

legal materials, committing perjury, refusing to mail legal mail, refusing to give [Plaintiff his] legal materials to answer the defendants['] motion for summary judgment [and] appeal." [*Id.*]

Plaintiff seeks a declaration that Defendants' acts violated the United States Constitution, injunctive relief, nominal damages, punitive damages, and compensatory damages. [*Id.* at 10.]

## APPLICABLE LAW

### Liberal Construction of Pro Se Complaint

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S.97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a

State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all

inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an

9

> adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Preliminary Injunction**

While Plaintiff's motion for preliminary injunction largely restates the allegations contained in his Complaint and does not clearly indicate what action Plaintiff wishes the Court to enjoin or compel, the Court has liberally construed Plaintiff's motion as a request to compel appropriate treatment of his mental health disorder and leg and foot pain.  [*See* Doc. 22.]  Plaintiff contends that without injunctive relief, he will suffer irreparable harm because he will die.  [*Id.* at 1.]  Plaintiff further contends he is likely to succeed on the merits of the underlying action, the balance of equities is in his favor, and granting the preliminary injunction is in the public interest.  [*Id.* at 2–5.]  The Court disagrees.

Usually, a preliminary injunction "protect[s] the status quo . . . to prevent irreparable harm during the pendency of a lawsuit [and] ultimately to preserve the court's ability to render a meaningful judgment on the merits."  *In re Microsoft Corp. Antitrust Litigation*, 333 F.3d 517, 525 (4th Cir. 2003).  However, mandatory preliminary injunctions, which compel action, "do not preserve the status quo and normally should be granted only in those circumstances when the exigencies of the situation demand such relief."  *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980) (citing *Interstate Commerce Comm'n v. Baltimore & Annapolis R.R. Co.*, 64 F.R.D. 337 (D. Md. 1974)).  Therefore, "a mandatory

preliminary injunction must be necessary both to protect against irreparable harm in a deteriorating circumstance created by the defendant and to preserve the court's ability to enter ultimate relief on the merits of the same kind." *Microsoft*, 333 F.3d at 526.

In any event, a preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Coucil, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 376 (2008) (citing *Munaf v. Green*, 553 U.S. 674, 689–90 (2008)). To obtain a preliminary injunction, a plaintiff must establish four elements:

    1)    he is likely to succeed on the merits,

    2)    he will suffer irreparable harm if the preliminary injunction is not granted,

    3)    the balance of equities favors him, and

    4)    the injunction is in the public interest.

*Id.* 374; *see also Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345–47 (4th Cir. 2009) (explaining how the *Winter* standard for preliminary injunctions is different from the standard previously applied in the Fourth Circuit), *judgment vacated and remanded*, 130 S. Ct. 2371 (2010), *in light of Citizens United v. Fed. Election Comm'n*, 130 S. Ct. 876 (2010). The plaintiff must establish all four elements to receive injunctive relief. *Winter*, 129 S. Ct. at 374.

Under *Winter*, the Supreme Court requires "that the plaintiff make a clear showing that it will likely succeed on the merits at trial." *Real Truth About Obama, Inc.*, 575 F.3d at 346 (citing *Winter*, 129 S. Ct. at 374, 376). Moreover, the party seeking the injunction must make a clear showing that it will likely suffer irreparable harm without an injunction.

*Id.* at 347 (citing *Winter*, 129 S. Ct. at 374–76).  Further, the Supreme Court in *Winter* emphasized the public interest requirement, *id.*, requiring courts to "'pay particular regard for the public consequences in employing the extraordinary remedy of injunction,'" *Winter*, 129 S. Ct. at 376–77 (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

Here, as discussed below, Plaintiff cannot establish that he is likely to succeed at trial because there is no genuine issue of material fact as to whether Defendants violated Plaintiff's constitutional rights, and the Court finds summary judgment should be granted in Defendants' favor.  Because Plaintiff cannot establish the first element—likelihood of success on the merits—the Court need not consider the remaining three elements.  *See Winter*, 129 S. Ct. at 374 (stating that the plaintiff must establish all four elements to receive injunctive relief).  Therefore, the Court finds Plaintiff is not entitled to a preliminary injunction and recommends that Plaintiff's motion be denied.

**Eighth Amendment Claim: Inadequate Medical Treatment**

In his motion for partial summary judgment, Plaintiff contends he and the Defendants agree as to the facts surrounding Plaintiff's claim of deliberate indifference to his serious mental health needs, and therefore, he seeks the Court's interpretation of the law as to this claim.[10]  [Doc. 30 at 1.]

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment and states a cause of action under § 1983 because deliberate indifference constitutes "the 'unnecessary and wanton infliction of pain.'"  *Estelle*, 429 U.S. at 104–05 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and

---

[10] Plaintiff's motion does not address any claims other than his claim that Defendants were deliberately indifferent to his mental health needs.  [*See* Doc. 30.]

Stevens, JJ.)). Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." (citation omitted)). Within the Fourth Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights. *Miltier*, 896 F.2d at 851; *see also Estelle*, 429 U.S. at 105 (stating that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment").

Therefore, to prevail on an Eighth Amendment claim, the prisoner must demonstrate (1) his medical condition was a sufficiently serious one and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind, which is satisfied by showing deliberate indifference by the prison officials. *Goodman v. Wexford Health Sources, Inc.*, No. 09-6996, 2011 WL 1594915, at *1 (4th Cir. Apr. 28, 2011) (quoting *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998)). A showing that the prison officials were merely negligent, such that the treatment constituted medical malpractice, will not establish deliberate indifference. *Estelle*, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not

13

become a constitutional violation merely because the victim is a prisoner."); *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). Moreover, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under § 1983. *Estelle*, 429 U.S. at 106.

Further, in the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981)); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir.1969); *Hirons v. Director*, 351 F.2d 613 (4th Cir.1965)) ("Prisoners are entitled to reasonable medical care."); *see also, e.g.*, *Barton v. Dorriety*, No. 9:10-cv-1362, 2011 WL 1049510, at *2 (D.S.C. Mar. 21, 2011) (citing *Jackson*, 846 F.2d at 817). The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation. *See, e.g.*, *Russell*, 528 F.2d at 319.

Here, the Court cannot enter summary judgment in favor of Plaintiff. Although the Court finds there is no genuine issue of material fact as to whether Defendants were deliberately indifferent to Plaintiff's mental health needs, the Court finds Plaintiff is not entitled to judgment as a matter of law. Assuming without deciding that Plaintiff's alleged mental illness is a sufficiently serious medical condition, the Court finds Plaintiff cannot establish Defendants acted with a sufficiently culpable state of mind. As Plaintiff's submissions indicate, Defendants did not ignore Plaintiff's mental health issues. [*See, e.g.*, Doc. 30-1 at 1–2, 30–34.] Moreover, the evidence produced by Plaintiff and Defendants precludes a finding that Defendants consciously disregarded a substantial and known risk

14

to Plaintiff's health or safety.  For example, Defendants have routinely evaluated Plaintiff's mental health and have responded to Plaintiff's mental health issues. [*See, e.g.*, Doc. 25-1 at 1–3, 5, 7–10; Doc. 30-1 at 1–2, 30–34; Doc. 42-1.]  Additionally, there are several notations in Plaintiff's medical files that indicate Plaintiff is drug seeking, possibly malingering, and acts up to get what he wants. [*See, e.g.*, Doc. 25-1 at 5; Doc. 30-1 at 20–22, 26–27, 36, 38.]  Accordingly, the Court finds Plaintiff cannot establish Defendants were deliberately indifferent to Plaintiff's mental health needs; therefore, the Court recommends Plaintiff's motion for partial summary judgment be denied.

**Qualified Immunity**

Defendants also argue they are entitled to qualified immunity because their conduct did not violate any clearly-established rights of which a reasonable government official would have known.  The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right.  *Id.*

A court "'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603,

15

609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Id.* If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff's allegations fail to demonstrate that Defendants violated Plaintiff's constitutional rights. Therefore, the Court finds Defendants are entitled to qualified immunity as to the claims addressed in this R&R.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that Plaintiff's motion for preliminary injunction be DENIED and Plaintiff's motion for partial summary judgment be DENIED.[11]

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

July 19, 2011
Greenville, South Carolina

---

[11] If the District Court adopts this recommendation, Plaintiff's claims outside of his claim of deliberate indifference to his mental health needs remain, including:

(1) Plaintiff's claims regarding an incident in which Williams sprayed Plaintiff with excessive amounts of gas [Doc. 1 at 6];

(2) Plaintiff's claims regarding an incident in which he was punished for displaying symptoms of his mental disorder [*id.* at 8]; and

(3) Plaintiff's claims regarding the withholding and disposal of his legal materials, which prevented Plaintiff from answering a summary judgment motion and appealing a case, as well as Plaintiff's other claims regarding the obstruction of justice [*id.* at 5, 7, 9].